## In re PICKENS MFG. CO.

### (District Court, N. D. Georgia. January 5, 1905.)

### No. 2,065.

1. **LOGS AND LOGGING (§ 3*)—CONSTRUCTION OF CONTRACT FOR SALE OF TIMBER —PAYMENTS.**

   A contract for the sale of standing timber on certain lands for the sum of $4,500 provided that it should be paid for as cut at the rate of $4.50 per thousand feet, "the payment to be made as follows: $125 to be paid on the 1st day of November, 1906, and thereafter on the 1st day of each month at the rate above stated, but not less than $125 shall be paid on the 1st day of each month from this date during the next 36 months." It also provided that in case of default in any payment the title to all lumber sawed from the timber cut should remain in the seller until such payment should be made. *Held*, that on the bankruptcy of the purchaser, being in default for two payments, the amount of its default was the amount due for timber cut at the rate of $4.50 per thousand, less the payments made, if it exceeded $125 per month during the time the contract had run.

   [Ed. Note.—For other cases, see Logs and Logging, Dec. Dig. § 3.*]

2. **BANKRUPTCY (§ 140*)—RIGHTS VESTING IN TRUSTEE—CONDITIONAL SALES— GEORGIA STATUTE.**

   A written contract for the sale of standing timber, to be paid for in monthly payments as cut, provided that "upon failure to make any monthly payment the title to all the lumber sawed from the timber removed from the above-named lots * * * shall remain in said party of the first part until the sums above set out are paid." *Held*, that on default in such payments the rights of the parties were governed by Code Ga. 1895, §§ 2776, 2777, under which, as construed by the Supreme Court of the state, although the contract was not recorded, the reservation of title was good as between the parties and as against general creditors of the purchaser, unless they extended credit after the property went into its possession on the faith of its ownership, but not good as against intervening liens or conveyances, and that it was therefore good as against its trustee in bankruptcy, in the absence of any showing that there were creditors of such preferred classes.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In Bankruptcy. On exceptions to report of referee on the intervention of F. C. Tate.

See, also, 158 Fed. 894.

John A. Henley, for petitioner.
Slaton & Phillips, for creditors and trustee.

NEWMAN, District Judge. On the 4th day of December, 1907, the Pickens Manufacturing Company was placed in the hands of receivers by the judge of the superior court of Pickens county, Ga. Subsequently, on the 27th day of December, 1907, a petition in bankruptcy was filed against the company, and after some hearings on the question of insolvency, and the respective rights of the state court and the bankruptcy court to administer the estate of the company, the assets in the hands of the receivers in the state court were turned over to the trustee in bankruptcy. F. C. Tate intervened in the case, and this intervening petition was referred to Referee P. H. Adams. The referee has made a report, exceptions have been filed thereto, argument had, and the matter submitted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The first question for consideration is the proper construction of a contract which, so far as material, is as follows:

"Georgia, Pickens County.

"This agreement, made this 13th day of October, 1906, between F. C. Tate, party of the first part, and Pickens Manufacturing Company, party of the second part, both of Pickens county, Georgia, witnesseth: That said party of the first part, for and in consideration of the sum of $4,500 to be paid to said party of the first part, his heirs, executors, or assigns, as hereinafter provided, hereby permits and allows for three years from this date to said party of the second part the right and privilege of entering upon, cutting, and removing any timber that is eight inches and more in diameter and suitable for lumber now standing on lots and parts of lots of land [then follows description of the lots]. Said party of the second part agrees to pay the amount above set out for said timber at the rate of $4.50 per thousand feet as the same is cut, hauled, and sawed, the payments to be made as follows: $125 to be paid on the 1st day of November, 1906, and thereafter on the 1st day of each month at the rate above stated, but not less than $125 shall be paid on the 1st of each month from this date during the next 36 months of this permit. No actual scale shall be required of lumber, but an approximate estimate shall be made each month to the first party. No timber of any kind shall be moved off the above-described lots and parts of lots of land after the expiration of this permit. Upon the failure to make any monthly payment the title to all the lumber sawed from the timber removed from the above-named lots and parts of lots of land shall remain in said party of the first part until the sums above set out are paid. * * * No failure on the part of the party of the second part to carry out the terms of his agreement shall in any way release him from his obligation to pay said sum of $4,500, nor shall he have any title, interest, or claim in any of the timber herein purchased that is not removed within three years from this date. Time is the essence of this contract. Party of the second part is to pay $4,500 for the permit or privilege of removing and having the timber so removed within this time herein specified, but his failure to remove timber within the time shall not give him any interest or right to remove the timber or permission to enter upon this land after the expiration of three years from this date, nor shall his failure to remove timber from any cause release him from his obligation to pay said sum of $4,500. * * *

"[Signed]                                      F. C. Tate.
                                          "Pickens Mfg. Co.,
                                          "By Cecil Rhyne, Mgr."

That portion of the report of the referee in which he construes the contract and applies it to the facts and evidence is as follows:

"Under the terms of the contract the title to all timber cut vested in the Pickens Manufacturing Company, subject to revesting in Tate upon the failure of the Pickens Manufacturing Company to make any monthly payment; but such title remained in Tate only until the sums due were paid. The referee finds, therefore, that the amounts which were not paid at the time the company was placed in the hands of the receivers were the November and December, 1907, payments, which amounted to $250, and that the company by making these payments would have revested with all title to the timber cut and the lumber arising from the same. The evidence in the case on the part of the intervener is not satisfactory as to the amount of lumber cut under this contract, which would afford a basis under his contention of $4.50 per thousand. This estimate is estimated and based upon hypothetical calculation, and would afford the referee no basis for a legal finding, if he was satisfied that $4.50 per thousand was the proper amount to be figured. But this, under the view taken by the referee that $125 was the amount to be paid each month, is not regarded as a material feature.

"The referee has found great difficulty in coming to a satisfactory conclusion as to the legal purport of the contract in question. It has some of the elements of conditional bills of sale with a condition subsequent, but likewise

has many of the attributes of an absolute bill of sale. It provides that the sum of $4,500 shall be paid in any event, even if a default has occurred the first month, and the title to said lumber was in Tate, yet Tate would have an absolute indebtedness against the Pickens Manufacturing Company for $4,500. An expression, however, is contained in the contract which preserves some of the elements of a conditional bill of sale, providing that upon the failure to make any monthly payment 'the title to all the lumber sawed, or the timber cut, shall remain in said party of the first part until the sums above set out are paid.' It is clear from the contract that the title to the lumber as cut should pass, and it cannot be disputed that the Pickens Manufacturing Company could have sold and given good title to all lumber cut by it from the timber on this land at any time prior to such default. With the above provision, however, there is some ground for the position that, upon the default taking place in the monthly payment, the title to the lumber so cut shall be in Tate until such sums are paid.

The referee has decided to give the benefit of this clause to the intervener, with much doubt, however. This, then, brings up for consideration what sums were in default. The referee finds that under the terms of the contract, as well as by the conduct and agreement of the parties, $125 per month was the monthly payment exacted, and that, when the company went into the hands of Pickens superior court, two months were in default, or the sum of $250; that, when the court seized the property, it was the act of the law; and that, the default being relieved, the title to the lumber became that of the Pickens Manufacturing Company, to which the trustees in this case succeeded. The referee finds, therefore, that the intervener is entitled to be paid by the trustee the sum of $250, being the amount of the two months' default, and that he is entitled to prove his claim as an unsecured creditor for the sum of $4,500, less $1,500 heretofore paid, and less the amount now allowed, to wit, $250, or less a total deduction of $1,750, or an unsecured claim of $2,750."

Two brief clauses of the contract must be considered in order to arrive at the proper construction of this contract. The first is this:

"The payments to be made as follows: $125 to be paid on the 1st day of November, 1906, and thereafter on the 1st day of each month at the rate above stated, but not less than $125 shall be paid on the 1st day of each month from this date during the next 36 months of this permit."

And this additional language:

"Upon the failure to make any monthly payment, the title to all the lumber sawed from the timber removed from the above-named lots and parts of lots of land shall remain in said party of the first part until the sums above set out are paid."

The language, it will be perceived, is that payments shall be made "the 1st day of each month at the rate above stated, but not less than $125 shall be paid on the 1st day of each month." Clearly the agreement is that the amount of lumber sawed from the timber taken should be paid for on the 1st day of each month at the rate of $4.50 per thousand feet, but, taking the statement that not less than $125 should be paid on the 1st of each month during the 36 months, it shows that Tate conceded that the company might take the timber only in such quantities as would realize about this amount of $125 per month for 36 months, making $4,500, the total contract price. Then the provision that, "upon failure to make any monthly payment, the title to all the lumber sawed from the timber removed from the above-named lots * * * shall remain in said party of the first part until the sums above set out are paid," clearly refers to the sums due for lumber cut and sawed at the rate of $4.50 per thousand feet. It might be more

clearly expressed, of course; but it is perfectly evident from this contract that the intention of the parties was that there should be due on the 1st day of each month from the company to Tate $4.50 per thousand feet for all the lumber cut and sawed during the preceding month, but the company would have the privilege of cutting for 36 months and need only cut $125 per month, and in any event they must pay at least $125, whether the timber was cut and sawed, or not.

It follows, therefore, that the company was in default to Tate for all the lumber sawed from timber obtained from the land in question at the rate of $4.50 per thousand feet at the time legal proceedings were begun against the company.

The next question is what the rights of Tate are against the lumber sawed and on the ground at the time these legal proceedings were commenced. This conditional bill of sale, or reservation of title, was not recorded. Section 2776 of the Code of Georgia of 1895, is as follows:

"Whenever personal property is sold and delivered with the condition affixed to the sale, that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing, and not otherwise. And the written contract of every such conditional sale shall be executed and attested in the same manner as mortgages on personal property; as between the parties themselves, the contract as made by them shall be valid, and may be enforced whether evidenced in writing or not."

Section 2777 is as follows:

"Conditional bills of sale must be recorded within thirty days from their date, and in other respects shall be governed by the laws relating to the registration of mortgages."

The proper rule on this subject in Georgia, gathered from the decisions of the Supreme Court of the state, was stated in Re Atlanta News Publishing Company (D. C.) 160 Fed. 519–522. The following extract from the opinion in that case will show what was there held:

"The meaning of section 2776 as applicable to the facts in this case, as construed by the Supreme Court of the state, is this: (1) Where there is a mere oral reservation of title, and no writing whatever on the subject, the title will be so fixed in the vendee that the rights of third parties obtaining judgments or liens antedating the sale may be enforced against the vendor's claim of title. (2) Where the contract reserving title in the vendor is in writing, although not properly executed and recorded, as required by the statute, the reservation is good as between the parties and as to general creditors, and also as to creditors with liens antedating the conditional sale, and is only subject to such liens as are obtained or debts arising from credit given in good faith by reason of the property being in the possession of the vendee with apparent ownership and without notice of title elsewhere."

The reservation of title here is undoubtedly good between the parties. It is good, also, against general creditors, unless such creditors extended credit after the property went into the possession of the vendee, and credit extended under the belief that the ownership of the property was in the vendee in possession thereof. It would not be good against intervening liens and conveyances. It is sufficient to hold now that under this contract there was a default on the part of the company to Tate for the amount due for all the lumber sawed

and not paid for at the rate of $4.50 per thousand feet, and that Tate retained title to the lumber on the premises to secure the amount so in default as between himself and the company.

What the rights of other parties against this lumber may be it is unnecessary now to determine. All that can be said is that, as between Tate and the company, Tate retained title to the sawed lumber on the ground, and what this amount was is not made clear by the referee's report, or by the evidence. The referee can adjust this, as between Tate and the trustee in bankruptcy, and as between other creditors who may claim peculiar rights against this lumber, as the various matters may arise, and in accordance with the views herein expressed.

An order will be entered sustaining the exceptions to the referee's action to the extent indicated above and in accordance therewith.